IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIE DIVISION

| | | |
|---|---|---|
| JABRIL LANE, | ) | 1:25-CV-00140-SPB-RAL |
| Plaintiff | ) | SUSAN PARADISE BAXTER<br>United States District Judge |
| v. | ) | RICHARD A. LANZILLO<br>Chief United States Magistrate Judge |
| CPSM K. STONE, et al, | ) | REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| Defendants | ) | ECF No. 14 |

## I. Recommendation

It is respectfully recommended that Defendants' Motion for Summary Judgment [ECF No. 14] be granted as to Plaintiff Jabril Lane's Eighth Amendment failure to protect claim. It is further recommended that the Court decline to exercise supplemental jurisdiction over Lane's negligence claim and remand that claim to the Forest County Court of Common Pleas for further proceedings pursuant to 28 U.S.C. § 1367(c)(3).

## II. Report

### A. Introduction

Plaintiff Jabril Lane, an inmate in the custody of the Pennsylvania Department of Corrections (DOC), initiated this action by filing a *pro se* complaint in

the Court of Common Pleas of Forest County. ECF No. 1. Defendants filed a timely Notice of Removal on May 30, 2025. *Id.* In his pleading, Lane maintains that food service personnel at SCI-Forest violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to protect him from dangerous contraband in his food tray. *Id.* He also asserts a state law negligence claim based on the same incident. *Id.* As Defendants, Lane has identified Correctional Food Service Manager K. Stone, Correctional Food Service Instructor Smith, and Correctional Officer McMurtry. *Id.*

Presently pending before the Court is Defendants' Motion for Summary Judgment. ECF No. 14. In conjunction with their motion, Defendants have supplied a brief in support, concise statement of material facts, and appendix of exhibits. ECF Nos. 15-17. Lane, in turn, has filed a brief in opposition, appendix of exhibits, and responsive concise statement. ECF Nos. 24-25. This matter is ripe for adjudication.

B. Factual Background

According to Lane, he was eating lunch in his cell in the Restricted Housing Unit (RHU) at SCI-Forest on February 22, 2024, when he "chewed on something sharp . . . which created instant pain as well as bleeding." ECF No. 1-1 ¶ 8. The foreign object in his mouth turned out to be a needle. ECF No. 15 ¶ 17; ECF No. 24-1. Lane was escorted to medical triage and the needle was removed from his mouth. ECF No. 15 ¶ 21; ECF No. 25 ¶ 21.

Lane does not allege that any of the Defendants put the needle in his food or knew that his food contained contraband. However, he states that it is "well known"

that contraband is "routinely smuggled to inmates in the RHU through the food trays." ECF No. 24-1. He maintains that Smith and McMurty each "knew of the smuggling of contraband from general population to the restricted housing unit" but failed to take protective measures to ensure his safety. *Id.* ¶ 16. He similarly alleges that Stone was "in charge of the care, custody and control of the food at SCI-Forest and had a duty to ensure food safety to incarcerated individuals and staff." ECF No. 1-1 ¶ 9.

C. Standard

Federal Rule of Civil Procedure 56(a) requires the court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this standard "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether a genuine issue of material fact remains for trial,

the court must view the record and all reasonable inferences to be drawn therefrom in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. Instead, once the movant satisfies its burden of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party must go beyond his pleadings with affidavits, depositions, answers to interrogatories or other record evidence to demonstrate specific material facts that give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Further, under Rule 56, a defendant may seek summary judgment by pointing to the absence of a genuine fact issue on one or more essential claim elements. The Rule mandates summary judgment if the plaintiff then fails to make a sufficient showing on each of those elements. When Rule 56 shifts the burden of production to the nonmoving party, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. *See Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

Finally, because Plaintiff is proceeding pro se, the court must "apply the applicable law, irrespective of whether [the] pro se litigant has mentioned it by name." *Holley v. Dep't of Veteran's Affairs,* 165 F.3d 244, 247-48 (3d Cir. 1999). Nevertheless, "a pro se plaintiff is not relieved of his obligation under [Federal Rule of Civil Procedure] 56 to point to competent evidence in the record that is capable of

refuting a defendant's motion for summary judgment." *Dawson v. Cook,* 238 F. Supp. 3d 712,717 (E.D. Pa. 2017) (citation omitted). In other words, a plaintiff's pro se status does not relieve him of his "obligation under Rule 56(c) to produce evidence that raises a genuine issue of material fact." *Id.* (quoting *Boykins v. Lucent Techs., Inc.,* 78 F. Supp. 2d 402, 408 (E.D. Pa. 2000)); *see also Winfield v. Mazurkiewicz,* 2012 WL 4343176, *1 (W.D. Pa. Sept. 21, 2012).

D. Analysis

1. Failure to protect

Lane asserts that Defendants failed to protect him from the risk of encountering a dangerous foreign object in his food despite it being "well known" that inmates used meal trays to smuggle contraband. The Eighth Amendment of the United States Constitution imposes a duty on prison officials to "take reasonable measures to guarantee the safety of inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). To state a viable failure-to-protect claim, the plaintiff must establish that: (1) he was incarcerated under conditions posing a substantial risk of serious harm; (2) the defendant was deliberately indifferent to that substantial risk; and (3) the defendant's deliberate indifference caused the plaintiff to suffer harm. *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012). The standard for deliberate indifference is subjective; thus, the prison official "must actually have known or been aware of the excessive risk to inmate safety." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001).

Lane's claim fails for at least two reasons. Initially, courts have widely held that isolated incidents of food contamination fall short of the severity required to trigger the Eighth Amendment's protections. *See, e.g.*, *Robinson v. Danberg*, 673 Fed. Appx. 205, 213 (3d Cir. 2016) (single incident of metal fragments in plaintiff's food was insufficient to establish an Eighth Amendment claim); *Rodriguez v. Nichols*, 521 Fed. Appx. 47, 49 (3d Cir. 2013) (affirming dismissal of complaint "premised on a one-time adulteration of [prisoner's] food" with rodent body parts); *Wesley v. Varand*, 505 Fed. Appx. 91, 94 (3d Cir. 2012) (dismissing complaint alleging corrections officers intentionally placed bullet fragments in prisoner's food, biting into which caused "chunks of [prisoner's] teeth to fall out"); *Ali v. Suchocki*, 254 Fed. Appx. 143, 145 (3d Cir. 2007) (affirming summary judgment for defendants where prisoner had claimed one incident of purposeful food tampering for which he developed a headache and nausea). As one court explained, "the failure to adequately secure food against a foreign object on one occasion constitutes negligence at most, and negligence is not actionable under § 1983." *DeShader v. Gourmet Dining Servs. Corp.*, 2010 WL 624895, at *4 (D.N.J. Feb. 22, 2010).

Secondly, and more critically, Lane has failed to adduce evidence that any Defendant was deliberately indifferent to the perceived risk. There is nothing in the record to indicate that Stone, Smith or McMurty knew (or should have known) that Lane's food tray contained contraband. Rather, Lane's allegation stems entirely from his belief that smuggling contraband in meal trays was such a "well known" practice in the RHU that Defendants should have taken additional steps to ensure his safety.

Defendants dismiss this type of allegation as too generalized and speculative to support an Eighth Amendment violation.

It is well-established that a prison official's awareness of "a generalized, hypothetical" threat to inmate safety "is too 'speculative' to support an Eighth Amendment violation." *Williams v. Pennsylvania Dept. of Corr.*, 2020 WL 5237606, at *6 (W.D. Pa. Aug. 14, 2020) (quoting *Bistrian*, 696 F.3d at 371. In *Bistrian*, the Third Circuit used two incidents of inmate assault, each perpetuated against the same unfortunate inmate, to illustrate the "crucial distinction" between a scenario in which prison officials were actually aware of an excessive risk to inmate safety, and one in which the risk of harm to the inmate was merely speculative. *Id.* (citing *Buckley v. Kowalski*, 2015 WL 179385 (D.N.J. Jan. 14, 2015). *See also Bistrian*, 696 F.3d at 371). In the first scenario, the inmate, Peter Bistrian, had been recruited by prison officials to assist the FBI with an investigation into a prison gang. *Bistrian*, 696 F.3d at 360. Bistrian, a prison orderly, had been engaged by several gang members to assist them by passing along written notes. *Id.* The FBI asked Bistrian to copy each note and provide the copy to prison officials before delivering the original to the intended recipient. *Id.* However, the sloppy nature of the operation alerted gang members to Bistrian's participation in the FBI investigation. *Id.* at 360-61. Several members of the gang began threatening to "seriously harm [Bistrian] if they were placed in the recreation yard with him at the same time." *Id.* at 361. Despite Bistrian's repeated pleas to prison officials for protection, he was placed in a locked recreation yard pen with those same gang members less than a month later. *Id.* They

beat him savagely, resulting in "a dislocated left shoulder, broken teeth, and multiple contusions and lacerations to his head and face that required sutures." *Id.*

Four months later, Bistrian was placed in the recreation yard with an inmate who had a history of random and violent attacks on other inmates. *Id.* at 362. While Bistrian was in hand restraints, the other inmate attacked him with a "manufactured razor-blade style weapon, repeatedly slashing and cutting [his] face, arms, and legs." *Id.* Bistrian sued, alleging that prison officials had failed to protect him from either attack despite their subjective awareness of the risk of harm presented by each of the attackers.

Examining the two scenarios, the Third Circuit drew a line between the first attack, which "alleged a sufficiently plausible failure-to-protect claim," and the second attack, which was "based on a mere possibility of harm." *Buckley*, 2015 WL 179385, at *4 (discussing *Bistrian*, 696 F.3d at 369-71). Addressing the first attack, the Court held:

> Bistrian [has] set[] out sufficient factual allegations, which we must accept as true, that make his repeated pleas radically different from an out-of-the-blue and unadorned "I'm-in-trouble" entreaty. The eight officials that Bistrian claims he "repeatedly advised (both verbally and in writing)" were the very officials that orchestrated the botched note-photocopying operation. Given their familiarity with the scheme and the players involved, it is quite plausible that they knew Bistrian's cries for help were legitimate and that he faced a substantial risk of serious harm. After all, the genesis of the operation was a desire to assist an FBI investigation into violent criminal activity by [gang members] that included, among other things, substantial witness intimidation.

*Bistrian*, 696 F.3d at 369-70 (citations omitted). In contrast, the Court held that Bistrian's allegations with respect to the second attack were too speculative to state a claim:

> Bistrian does not allege that [the second attacker] had any connection to [the gang] or that [he] otherwise attacked him because he was an informant. Instead, Bistrian refers to [the second attacker's] "history of violent assaults against other inmates" . . . and generally creates the impression that [the] attack was unprovoked, inexplicable, and unrelated to his participation in the note-copying operation. Thus, according to Bistrian, the risk of the harm that occurred was the risk that an inmate with a history of violence might attack another inmate for an unknown reason. We cannot conclude on these allegations that prison officials were deliberately indifferent to such a speculative risk.

*Id.* at 371 (citations omitted).

Lane's allegation regarding the use of food trays to smuggle contraband into the RHU falls into the latter category described in *Bistrian*. Despite his conclusory averment that this practice is "well known" throughout the prison, there is nothing in the record to suggest Defendants were aware of any specific threat. Rather, Lane's averment is precisely the type of speculative entreaty that the Third Circuit and other courts have routinely deemed inadequate to support an Eighth Amendment claim. *Bistrian*, 696 F.3d at 369-71 (rejecting an inference of deliberate indifference based solely on a prison official's awareness of a particular inmate's propensity for violence); *Brooks v. Harper*, 2023 WL 2653471, at *11 (W.D. Pa. Mar. 2, 2023) (allegation that defendants "fail[ed] to keep the jail free from contraband and provide poison-free food" was too speculative to suggest a plausible constitutional violation based on plaintiff having ingested "bagged contraband in oatmeal on his food tray"); *Williams*,

2020 WL 5237606, at *7 (general allegation that inmates from a certain unit were "violent" was too speculative to support an Eighth Amendment claim). Because Lane has failed to plead or adduce evidence that Defendants were aware of a specific threat of harm, summary judgment is warranted.

2. Negligence

Lane also asserts a state law claim for negligence based on the same incident. Having dismissed all claims over which the Court has original jurisdiction, the Court will decline to exercise supplemental jurisdiction over that claim.

"Federal courts are of limited jurisdiction, and may only decide cases consistent with the authority afforded by the Constitution or statutes of the United States." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 378 (1994). Thus, "[w]hen the claims over which a district court has original jurisdiction are resolved before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Neelu Pal v. Jersey City Med. Ctr.*, 658 Fed. Appx. 68, 74 n. 6 (3d Cir. 2016) (emphasis in original) (internal quotation marks and citations omitted); *see also Yue Yu v. McGrath*, 597 Fed. Appx, 62, 68 (3d Cir. 2014) (affirming the district court's decision to dismiss "all of the remaining state and common law claims after awarding summary judgment to [d]efendants on all of the federal claims over which it had original jurisdiction"). "Importantly, pendent jurisdiction is a doctrine of discretion, not a plaintiff's right." *Yue Yu*, 597 Fed. Appx. at 68.

As Lane's negligence claim is entirely grounded in state law, the Court will decline to exercise supplemental jurisdiction over that claim. *Id.* at 68; *see also* 28 U.S.C. § 1367(c)(3) (permitting a district court to decline to exercise supplemental jurisdiction where it has "dismissed all claims over which it has original jurisdiction"). Consequently, Lane's negligence claim should be remanded to the Forest County Court of Common Pleas for further proceedings.

## III. Conclusion

Consistent with the foregoing, it is recommended that summary judgment be granted in favor of Defendants and against Lane as to his Eighth Amendment failure to protect claim. It is further recommended that the Court should decline to exercise supplemental jurisdiction over Lane's negligence claim and remand that claim to the Forest County Court of Common Pleas for further proceedings pursuant to 28 U.S.C. § 1367(c)(3).

## IV. Notice

In accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72, the parties must seek review by the district court by filing Objections to the Report and Recommendation within fourteen (14) days of the filing of this Report and Recommendation. Any party opposing the Objections shall have fourteen (14) days from the date of service of the Objections to respond thereto. *See* Fed. R. Civ. P. 72(b)(2). Extensions of time will not be granted. Failure to file timely objections may constitute a waiver of appellate rights. *See Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011); *Nara v. Frank*, 488 F.3d 187 (3d Cir. 2007).

DATED this 23rd day of July, 2026.

SUBMITTED BY:

RICHARD A. LANZILLO
Chief United States Magistrate Judge